FILED

2025 Sep-19 PM 12:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| NENA MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:24-cv-00441-NAD |
| | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| COMMISSIONER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Nena Miller appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for supplemental security income benefits. Doc. 1. Plaintiff Miller applied for benefits with an alleged onset date of June 1, 2021. Doc. 14 at 1. The Commissioner partially granted Miller's claim for benefits. Doc. 9-3 at 20. In this appeal, the parties consented to magistrate judge jurisdiction. Doc. 11; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

### ISSUES FOR REVIEW

In this appeal, Miller argues that substantial evidence does not support the

1

decision of the Administrative Law Judge (ALJ) because the ALJ failed to include limitations from Miller's cyclic vomiting syndrome when determining Miller's residual functional capacity.  Doc. 14 at 12.  Miller also argues that the ALJ failed to fully evaluate Miller's borderline age situation.  Doc. 14 at 14.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505, § 416.905.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:    (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council.  *See* 20 C.F.R. § 404.900(a)(1)–(4), § 416.1400(a)(1)–(4) .

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     if not, whether the claimant has a severe impairment or combination of impairments;

(3)     if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)     if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)     if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211. At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018)

(quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).    If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act.  The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

A.    With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982) (similar).  If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.**    With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

# BACKGROUND

## A.     Procedural background

Miller filed a prior application for benefits in 2010, which the Commissioner denied.  *See* Doc. 9-8 at 2–3.

On June 16, 2021, Miller filed an application for supplemental security income (SSI), alleging disability beginning on June 1, 2021.  Doc. 9-7 at 2.  Miller's application was denied at the initial level (and on reconsideration).  Doc. 9-3 at 11. Following the denial of her claim, Miller requested a hearing before an ALJ.  Doc. 9-3 at 11.  Miller appeared and testified at a hearing on April 11, 2023.  Doc. 9-3 at 11.  On July 26, 2023, the ALJ entered a partially favorable decision.  Doc. 9-3 at 20.

The Appeals Council denied Miller's request for review.  Doc. 9-3 at 2. Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner on November 28, 2023.  Doc. 9-3 at 2–4; *see* 42 U.S.C. § 405(g).

## B.     Factual background and ALJ hearing

Miller was born on September 16, 1968.  Doc. 9-7 at 2.

On May 26, 2021, Miller was admitted to EPHS Baroness Erlanger Hospital ("Erlanger") for abdominal pain and nausea and vomiting.  Doc. 9-12 at 22.  Miller presented with "3 weeks of nausea, vomiting, and abdominal pain with associated

sore throat." Doc. 9-12 at 34. Miller was "[n]egative for agitation and confusion." Doc. 9-12 at 30. Miller's mood, affect, and behavior were normal, and Miller was alert and oriented to person, place, and time. Doc. 9-12 at 52. Miller's history of present illness stated that Miller had a "self-reported past medical history of pancreatic cancer, 'kidney and liver issues,' [and] recent injury to the right upper abdomen." Doc. 9-12 at 23. Miller was also noted to have "history of uncontrolled hypertension." Doc. 9-12 at 87. EMS reported that Miller "fell three weeks ago and had a penetrating injury to her abdomen and was treated at DeKalb." Doc. 9-12 at 33. Miller reported that "she fell from a step-stool and lacerated her right flank 3.5 weeks ago." Doc. 9-12 at 34. A CT scan "was concerning for enteritis versus obstruction." Doc. 9-12 at 41. Miller described the severity of her pain as a 10 out of 10. Doc. 9-12 at 41. Miller "was educated on importance of cessation of marijuana as this could be contributing to nausea and vomiting." Doc. 9-12 at 41.

On June 2, 2021, Miller was admitted to Erlanger for abdominal pain. Doc. 9-9 at 6. Miller was diagnosed with generalized abdominal pain and nausea and vomiting. Doc. 9-9 at 6. Miller was alert and oriented to person, place, and time, and Miller appeared anxious. Doc. 9-10 at 72. A small bowel obstruction was present on admission. Doc. 9-9 at 6. Miller underwent a colonoscopy on June 6, 2021, and two polyps were removed. Doc. 9-9 at 7. Miller underwent a small bowel enteroscopy on June 6, 2021. Doc. 9-9 at 10. A large hiatal hernia was present, but

Miller's esophagus and stomach were otherwise normal.  Doc. 9-9 at 10.  Miller "endorse[d] frequent marijuana use."  Doc. 9-10 at 70.

On June 17, 2021, Miller presented to the Erlanger emergency room with abdominal pain, nausea and vomiting, and diarrhea.  Doc. 9-10 at 35.  A CT scan of Miller's pelvis showed a borderline dilation of the duodenal and proximal jejunum, reflective of ileus and/or enteritis, and a possible developing small bowel obstruction.  Doc. 9-10 at 59.  The CT scan also showed potential wall thickening of the sigmoid colon, possibly reflective of colitis.  Doc. 9-10 at 59.

On July 7, 2021, Miller presented to Primary Healthcare Centers for gastrointestinal issues and vomiting.  Doc. 9-13 at 20.  Miller presented as alert and oriented, and had an appropriate mood and affect.  Doc. 9-13 at 21.  A urine culture was positive for E. coli.  Doc. 9-13 at 22.  Miller was treated for acute cystitis without hematuria and cyclic vomiting syndrome.  Doc. 9-13 at 21.

On July 14, 2021, Miller presented to the Erlanger emergency room with abdominal pain, nausea and vomiting, and diarrhea.  Doc. 9-10 at 8.  Miller was diagnosed with cyclic vomiting syndrome.  Doc. 9-10 at 6.  Diagnostic imaging of Miller's abdomen and pelvis resulted in no acute findings.  Doc. 9-10 at 33–34.

On October 15, 2021, Miller presented to Primary Healthcare Centers with kidney pain.  Doc. 9-13 at 16.  Miller was treated for acute cystitis without hematuria and cyclic vomiting.  Doc. 9-13 at 17–18.

On December 18, 2021, Miller underwent a comprehensive mental status examination with Nina E. Tocci, Ph.D.  Doc. 9-13 at 43.  Miller "had fair eye contact, sad facial expressions, and was cooperative."  Doc. 9-13 at 14.  Miller "was distraught and had difficulty composing herself," and she "cried throughout the interview."  Doc. 9-13 at 44.  Miller reported that during the day "she draws, talks to, plays with, and cares for her dogs" and "does light chores when she is able."  Doc. 9-13 at 45.  Miller stated that she "performs activities of daily living with assistance from her mother" and "does not drive."  Doc. 9-13 at 45.  Tocci's diagnostic impression of Miller was recurrent, severe major depressive disorder.  Doc. 9-13 at 45.

On February 14, 2022, Miller attended an appointment with CED Mental Health Center.  Doc. 9-13 at 54.  Miller reported that her doctor referred her to CED Mental Health Center to get help with anxiety.  Doc. 9-13 at 60.

On March 11, 2022, Miller attended a telehealth appointment with CED Mental Health Center.  Doc. 9-13 at 50.  Miller reported daily anxiety, nightly nightmares, and "off and on" depression.  Doc. 9-13 at 51.  The therapist recommended therapy and a medication assessment to help Miller "work through her trauma and learn better coping skills."  Doc. 9-13 at 64.

On July 8, 2022, Miller underwent a disability medical exam with Marla Byrum, CRNP.  Doc. 9-13 at 72.  Miller reported that she was able to handle her

own cooking/meal prep, personal care, housekeeping and laundry, shopping/banking, and driving. Doc. 9-13 at 73. Miller complained of vomiting since 2013 and reported vomiting spells for two to three weeks out of the month. Doc. 9-13 at 72. Miller reported associated stomach pain with burning sensation from her stomach to her throat. Doc. 9-13 at 72. Miller complained of anxiety and depression. Doc. 9-13 at 72. Byrum stated that it appeared that Miller had "PVD with edema and reduced pedal pulse with reduced sensation." Doc. 9-13 at 76. Miller "ambulate[d] independently and did not require assistant device with no problems getting off/on exam table." Doc. 9-13 at 75. Miller could also "feel vibration." Doc. 9-13 at 75. Byrum listed "cyclical vomiting per chart," neuropathy to bilateral lower extremities, possible PVD, anxiety, depression, GERD, nicotine dependent, possible vertigo, essential hypertension, poor vision, and morbid obesity as Miller's diagnoses. Doc. 9-13 at 76. Miller's range of motion report form showed normal range of motion for all categories. Doc. 9-13 at 77–81.

On July 21, 2022, Miller attended a mental health examination with CED Mental Health Center. Doc. 9-13 at 93. Miller reported depression, anxiety, and nightmares. Doc. 9-13 at 94. Miller's diagnoses included bipolar I disorder, panic disorder, and generalized anxiety disorder. Doc. 9-13 at 95.

On September 5, 2022, Miller presented to the emergency department at Gadsden Regional Medical Center with abdominal pain with nausea and vomiting.

Doc. 9-13 at 109.  Miller was diagnosed with a urinary tract infection.  Doc. 9-13 at 83.  She was prescribed antibiotics.  Doc. 9-13 at 84.  Diagnostic radiology revealed emphysema, no acute findings.  Doc. 9-13 at 116.

On September 19, 2022, Miller presented to the emergency department at Gadsden Regional Medical Center with abdominal pain.  Doc. 9-13 at 125.  A CT scan revealed no acute findings, punctate nonobstructing left renal stone, and diverticulosis.  Doc. 9-13 at 124.

On October 3, 2022, Miller presented to the emergency department at Gadsden Regional Medical Center with nausea and vomiting.  Doc. 9-13 at 140.  A CT scan revealed no acute findings in the abdomen or pelvis.  Doc. 9-13 at 138.  Miller's diagnoses were abdominal pain, vomiting, and acute UTI.  Doc. 9-13 at 144.  Miller stated that she "was undergoing treatment by a team of GI specialist[s] at Erlanger last summer but is not currently seeing any GI specialists."  Doc. 9-13 at 140.

On November 17, 2022, Miller attended a mental status exam at CED Mental Health Center.  Doc. 9-13 at 89.  Miller's diagnoses included major depressive disorder, panic disorder, and generalized anxiety disorder.  Doc. 9-13 at 90.

On January 6, 2023, Miller attended an appointment with Shelby Graves, CRNP for numbness in her leg.  Doc. 9-13 at 102.  Graves determined that Miller's bilateral leg pain "may be due to venous insufficiency from HTN, smoking, and

obesity." Doc. 9-13 at 105.

On April 11, 2023, the ALJ held an in-person hearing on Miller's application for SSI benefits. Doc. 9-3 at 47.

Miller testified that she last worked in 2009 as a cashier at a gas station. Doc. 9-3 at 49–51. Miller testified that, before working at the gas station, she did not work anywhere but "did odd end jobs." Doc. 9-3 at 51.

Miller also testified that she lives in a housing project with her 74-year-old mother. Doc. 9-3 at 52.

Miller testified further that she has cyclic vomiting syndrome, which causes her to "throw up for . . . a day, or it can last weeks." Doc. 9-3 at 52. Miller testified that she last had a vomiting episode two days before her hearing, and she vomited nine to ten times in a ten-hour period. Doc. 9-3 at 53. Miller testified that she also has "excruciating" stomach pain as a result of the vomiting, which she would rate on a pain scale as a 9 to 10 out of 10. Doc. 9-3 at 54–55.

Miller testified that she takes Zofran to help with vomiting. Doc. 9-3 at 55. Miller testified that vomiting occurs "about every other week" but sometimes "straight on for about three weeks." Doc. 9-3 at 55.

Miller also testified that she has "nerve damage in the lower back" and numbness in her legs and that she is pre-diabetic. Doc. 9-3 at 56–57.

Miller testified further that she has depression and anxiety. Doc. 9-3 at 57.

Miller testified that she was prescribed Zoloft for anxiety at CED Mental Health and sees a doctor and a counselor there. Doc. 9-3 at 59. Miller testified that her treatment at CED Mental Health has "not really" helped her. Doc. 9-3 at 59–60.

Miller testified that she lives in a two-bedroom apartment with her mother that is handicap accessible. Doc. 9-3 at 60. Miller testified that she wakes up between 8:00 a.m. and 9:00 a.m. Doc. 9-3 at 61. Miller testified that in the mornings she does "nothing" but "sit there and talk" with her mother. Doc. 9-3 at 61. Miller testified that in the afternoons she and her mother watch the news, and Miller helps her mother with her Bible study or Sunday school. Doc. 9-3 at 62. Miller testified that she does not go to church because she "just can't handle the crowd." Doc. 9-3 at 62.

Miller also testified that she has three children, but she does not see them very often. Doc. 9-3 at 63. Miller testified that she does not visit with friends or travel anywhere and that she does not own a car or have a driver's license. Doc. 9-3 at 63–64.

Miller testified further that she cannot return to a cashier job because she "can't handle being around people," and because of the "new updated tech." Doc. 9-3 at 65.

Miller testified that her mother helps her with her hair and with putting on her shoes. Doc. 9-3 at 66.

Miller also testified that before she had a prescription for Zofran she used over-the-counter Dramamine and home remedies to help with vomiting. Doc. 9-3 at 68–69. Miller testified that she takes Zofran "every four to six hours" "pretty much all the time." Doc. 9-3 at 69.

Miller testified further that she smokes "3/4 of a pack [of cigarettes] a day" but is trying to quit because her "breathing is bad." Doc. 9-3 at 69–70.

Vocational Expert (VE) Howard Steinberg testified that a hypothetical individual with Miller's age, education, work experience, and the limitations posed by the ALJ could perform jobs that existed in significant numbers in the national economy. Doc. 9-3 at 70–75.

### C.    ALJ decision

On July 26, 2023, the ALJ entered a partially favorable decision. Doc. 9-3 at 11–20. In the decision, the ALJ concluded that Miller "was not disabled prior to July 14, 2023, but became disabled on that date and has continued to be disabled through the date of this decision." Doc. 9-3 at 20.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §416.920(a); *Winschel*, 631 F.3d at 1178). Doc. 9-3 at 12–13. The ALJ found that Miller had not engaged in substantial gainful activity since the date of application, June 14, 2021. Doc. 9-3 at 13. The ALJ found that Miller had severe impairments of cyclic vomiting syndrome, obesity, major depressive disorder, and generalized

anxiety disorder.  Doc. 9-3 at 13.  The ALJ also found that Miller had a history of hypertension, which "is an impairment that can usually be managed with lifestyle changes and medication." Doc. 9-3 at 13.  The ALJ found that there was no evidence that [Miller] has experienced any significant symptoms rising from hypertension, as there is no consistent evidence of malaise, fatigue, orthopnea, and peripheral edema, shortness of breath, dizziness, irregular heartbeat, palpitations, or sweat." Doc. 9-3 at 13.  The ALJ found that Miller's history of hypertension "does not cause more than minimal, if any, work-related limitations."  Doc. 9-3 at 13.

The ALJ found that Miller has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the applicable Social Security regulations.  Doc. 9-3 at 14.  The ALJ found that Miller had a moderate limitation in understanding, remembering, or applying information before the established onset date.  Doc. 9-3 at 14.  The ALJ found that Miller is "able to prepare meals, to perform some household chores, to drive, and to do her own banking."  Doc. 9-3 at 14.  The ALJ found that Miller had a moderate limitation in interacting with others before the established onset date. Doc. 9-3 at 14.  The ALJ found that Miller has alleged increased anxiety in public but that she has been described as cooperative and alert during examinations.  Doc. 9-3 at 14.  The ALJ found that, with regard to concentrating, persisting, or maintaining pace, Miller had a moderate limitation before the established onset date.

Doc. 9-3 at 14.  The ALJ found that Miller has alleged difficulty with concentration and has presented with scattered attention on examination, but that additional examinations show that Miller has been alert and oriented.  Doc. 9-3 at 14.  The ALJ also found that Miller experienced a moderate limitation in adapting or managing herself before the established onset date.  Doc. 9-3 at 14.  The ALJ found that Miller has a history of drug use and lack of consistent treatment, but that Miller has demonstrated an ability to seek medical treatment and to communicate side effects and effectiveness of her medication.  Doc. 9-3 at 14–15.  The ALJ then found that Miller's mental impairments did not satisfy the criteria of the applicable mental disorder listings, as Miller is able to prepare meals, perform personal hygiene, and do household chores.  Doc. 9-3 at 15.

The ALJ then determined Miller's residual functional capacity (RFC), finding that since June 1, 2021, Miller could "perform medium work" as defined in the regulations, except that she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, heat, and vibration and any exposure to hazards; can understand, remember, and carry out simple instructions and maintain attention for two-hour periods; can tolerate occasional interaction with the general public and coworkers; and that changes in the workplace should be introduced gradually and occur no more than occasionally.  Doc. 9-3 at 15.

In assessing Miller's RFC and the extent to which her symptoms limited her function, the ALJ stated that the ALJ "must follow" the required "two-step process": (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Doc. 9-3 at 15. The ALJ also stated that, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Doc. 9-3 at 15.

In finding Miller's RFC, the ALJ considered information from Miller's medical records and hearing testimony regarding the limitations from her impairments, including Miller's testimony that "she has been diagnosed with cyclical vomiting syndrome, which causes her to vomit for various amounts of time" and that her stomach pain is "a 9 out of 10." Doc. 9-3 at 15. The ALJ also considered Miller's testimony that she has been treated for depression and anxiety and that, "although she has tried therapy, it is not helping." Doc. 9-3 at 15. The ALJ considered further Miller's testimony that "she does not like to be around people and that she could not breathe well around others." Doc. 9-3 at 15.

17

After considering the record evidence and subjective allegations, the ALJ found that Miller's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that Miller's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported." Doc. 9-3 at 15–16.

The ALJ summarized the evidence underlying the ALJ's decision, finding that Miller was diagnosed with cyclic vomiting syndrome at Erlanger in May 2021. Doc. 9-3 at 16. The ALJ found that Miller "stated that she had fallen and sustained a penetrating injury to her abdomen and had been vomiting since then." Doc. 9-3 at 16. The ALJ found that "imaging showed small bowel obstruction, prominent small bowel loops with wall thickening and multiple borderline dilated small bowel loops, and she was also diagnosed with a urinary tract infection." Doc. 9-3 at 16. The ALJ found that Miller "continued to experience frequent vomiting into July 2021, and she admitted to smoking marijuana to help ease the frequency." Doc. 9-3 at 16. The ALJ found that Miller "complained of kidney pain in October 2021, and her urine culture was positive for E. Coli." Doc. 9-3 at 16.

The ALJ found that Miller presented to Dr. Nina Tocci for a comprehensive mental status examination in 2021. Doc. 9-3 at 16. The ALJ found that at the examination, "[w]hen asked why she applied for disability, [Miller] reported her history of vomiting, anxiety about going in public, and difficulty with walking, for

which she had not sought treatment." Doc. 9-3 at 16.  The ALJ found that Miller made fair eye contact and was cooperative, but that she was distraught and had some difficulty composing herself during the examination.  Doc. 9-3 at 16.  The ALJ found that Miller was oriented to time, place, person, and situation, but Miller had scattered attention and concentration during the examination.  Doc. 9-3 at 16.  The ALJ found that Miller alleged she performed her activities of daily living with assistance from her mother.  Doc. 9-3 at 16.

The ALJ also found that Miller sought treatment at CED Mental Health Center in 2022 for trouble sleeping, depression, little energy, concentration difficulties, restlessness, poor appetite, and suicidal ideation.  Doc. 9-3 at 16.  The ALJ found that Miller had a generally normal examination and was noted to be engaging and cooperative.  Doc. 9-3 at 16.  The ALJ found that in July 2022 Miller had normal mental status findings except for some anxiety.  Doc. 9-3 at 16.

The ALJ found further that in July 2022 Miller presented to Nurse Practitioner Marla Byrum for a consultative examination where Miller explained her history of cyclic vomiting, estimating that she has vomiting spells two to three weeks out of the month, which results in fatigue.  Doc. 9-3 at 16.  The ALJ found that Miller reported muscle pain in her chest, dizziness at times, bilateral leg pain, swelling, depression, and anxiety.  Doc. 9-3 at 16.  The ALJ found that Miller stated that she was able to cook, perform personal hygiene, do household chores, shop, bank, and

drive independently.  Doc. 9-3 at 17.  The ALJ found that Miller was alert and oriented but did display some signs of anxiety and depression.  Doc. 9-3 at 17.

The ALJ found that in September and October 2022 Miller was treated for urinary tract infections that caused abdominal pain and vomiting.  Doc. 9-3 at 17. The ALJ found that Miller admitted that she had not sought treatment from a GI specialist in a year.  Doc. 9-3 at 17.

The ALJ also found that in November 2022 Miller was cooperative and appropriate, and Miller's thoughts, intelligence, memory, and orientation were within normal limits.  Doc. 9-3 at 17.  The ALJ found that Miller alleged that she felt isolated and had increased anxiety when she left her house.  Doc. 9-3 at 17.  The ALJ found that a physical examination showed that Miller was in no acute distress and had a normal examination except for the color and pigmentation of her lower extremities.  Doc. 9-3 at 17.

After a review of the evidence, the ALJ found that Miller was not disabled and could "perform work at the medium exertional level."  Doc. 9-3 at 17.  The ALJ found that "the records do not support [Miller's] allegations regarding the frequency of vomiting."  Doc. 9-3 at 17.  The ALJ found that, "while [Miller] alleged that she cannot work due to her vomiting, she has not sought significant treatment for this condition."  Doc. 9-3 at 17.  The ALJ found that Miller "was prescribed medication and was encouraged to change her diet in 2021; however, her three visits to the

20

emergency room in 2022 resulted in diagnoses of urinary tract infections."  Doc. 9-3 at 17.

The ALJ found "generally normal physical findings, which supports a limitation to medium work."  Doc. 9-3 at 17.  The ALJ found that Miller has been diagnosed with morbid obesity, and the ALJ "considered the impact obesity has on limitation of function including [Miller's] ability to perform routine movement and necessary physical activity within the work environment."  Doc. 9-3 at 17.  The ALJ found that, even with some reduced sensation in her lower extremities, Miller was able to "ambulate independently and to feel vibration."  Doc. 9-3 at 17.  The ALJ found that, given the one-time observation of reduced sensation along with Miller's obesity, Miller should only frequently climb ramps and stairs, stoop, kneel, crouch, and crawl.  Doc. 9-3 at 17.  The ALJ found that Miller should avoid extreme cold, heat, and vibration, and that Miller should never be exposed to hazards or be required to climb ladders, ropes, or scaffolds.  Doc. 9-3 at 17.

The ALJ then found that Miller's ability "to drive, to care for her dogs, to draw, to perform household chores, to shop, and to bank . . . . demonstrate an ability to understand, remember, and carry out simple instructions."  Doc. 9-3 at 18.  The ALJ also found that Miller "has stated that her medications do work."  Doc. 9-3 at 18.  The ALJ found that, "[b]ased on some increased anxiety during examinations, . . . [Miller] can only tolerate occasional interaction with the general public and with

21

coworkers." Doc. 9-3 at 18.

The ALJ "fully considered the medical opinions and prior administrative medical findings," finding that Miller's RFC was supported by her treatment history and activities of daily living. Doc. 9-3 at 18.

The ALJ found that Miller has no past relevant work. Doc. 9-3 at 18.

The ALJ also found that Miller was an individual closely approaching advanced age. Doc. 9-3 at 18. The ALJ found that a "borderline age situation exists because [Miller] is within a few days to a few months of attaining the next higher age category and applying the chronological age would result in a denial of the Title XVI claim(s)." Doc. 9-3 at 18. The ALJ found that "[u]se of the next higher age category is supported by the significant adverse impact of all actors on the claimant's ability to adjust to other work." Doc. 9-3 at 18. The ALJ found that, because Miller was "within a few months of reaching an older age category and using the older age category will result in a finding of disability, [the ALJ] will consider the older age category after evaluating the overall impact of all the factors in this case." Doc. 9-3 at 19. Because Miller would be 55 on September 15, 2023, the ALJ considered Miller to be of advanced age as of July 14, 2023. Doc. 9-3 at 19.

The ALJ found further that Miller has a limited education and no transferable job skills. Doc. 9-3 at 19.

The ALJ found that prior to July 14, 2023, there were jobs that existed in

significant numbers in the national economy that Miller could have performed.  Doc. 9-3 at 19.  Consequently, the ALJ found that prior to July 14, 2023, a finding of not disabled is appropriate.  Doc. 9-3 at 20.

The ALJ found that on July 14, 2023, Miller's age category changed, and considering Miller's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Miller could perform.  Doc. 9-3 at 20.  Consequently, the ALJ found that Miller was not disabled prior to July 14, 2023, but Miller became disabled on that date and continued to be disabled through the date of the decision (July 26, 2023).  Doc. 9-3 at 20.  The ALJ found that Miller's disability was expected to last twelve months past the onset date.  Doc. 9-3 at 20.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal standards.   Miller argues that the "ALJ's residual functional capacity is not supported by substantial evidence because it fails to include limitations from [her] cyclic vomiting syndrome."  Doc. 14 at 12.  Miller also argues that the ALJ erred "by failing to question the VE about [Miller's] borderline [age] situation and the impact of her additional adversities on her borderline age onset date issue."  Doc. 14 at 17.

I.    **The ALJ's decision properly was based on the multi-part "pain standard," and was supported by substantial evidence.**

The ALJ's decision was properly based on the multi-part "pain standard" and supported by substantial evidence.

A.    **The ALJ's decision properly was based on the multi-part "pain standard."**

As an initial matter, the ALJ's decision properly was based on the multi-part "pain standard." When a claimant attempts to establish disability through his own testimony concerning pain or other subjective symptoms, the multi-step "pain standard" applies. That "pain standard" requires (1) "evidence of an underlying medical condition," and (2) either "objective medical evidence confirming the severity of the alleged pain" resulting from the condition, or that "the objectively determined medical condition can reasonably be expected to give rise to" the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Raper v. Commissioner of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024); 20 C.F.R. § 416.929 (standards for evaluating pain and other symptoms).

Then, according to both caselaw and the applicable regulations, an ALJ "will consider [a claimant's] statements about the intensity, persistence, and limiting effects of [her] symptoms," and "evaluate [those] statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant is] disabled." 20 C.F.R. § 416.929(c)(4); *see Hargress v.*

24

*Social Sec. Admin., Comm'r*, 883 F.3d 1302, 1307 (11th Cir. 2018).

Here, in analyzing Miller's RFC, the ALJ stated that the ALJ "must follow a two-step process":  (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  Doc. 9-3 at 15. According to the ALJ, where the claimant's statements about the intensity, persistence, or limiting effects of symptoms were not substantiated by objective medical evidence, the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  Doc. 9-3 at 15.

The ALJ then applied the two-part test and found first that Miller's medically determinable impairments, including her cyclic vomiting syndrome, "could reasonably be expected to cause some of the alleged symptoms."  Doc. 9-3 at 15. The ALJ then found second that Miller's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported."  Doc. 9-3 at 16.  Thus, the ALJ's decision was based on the proper legal standards.

**B.    Substantial evidence supported the ALJ's decision to partially discredit Miller's subjective testimony regarding her impairments and associated symptoms.**

Furthermore, substantial evidence supported the ALJ's decision not to fully credit Miller's subjective testimony regarding her impairments and associated pain and symptoms from her cyclic vomiting syndrome.

**1.    The Eleventh Circuit requires that an ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony.**

Under controlling Eleventh Circuit law, an ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony.  *Wilson*, 284 F.3d at 1225.  A claimant can establish that he is disabled through her "own testimony of pain or other subjective symptoms."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

An ALJ "will not reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [those] symptoms have" on the claimant's ability to work "solely because the available objective medical evidence does not substantiate [those] statements."  20 C.F.R. § 416.929(c)(2).

So, when an ALJ evaluates a claimant's subjective testimony regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ must consider all of the evidence, objective and subjective.  20 C.F.R. § 416.929.  Among other things,

the ALJ considers the nature of the claimant's pain and other symptoms, her precipitating and aggravating factors, her daily activities, the type, dosage, and effects of her medications, and treatments or measures that she has to relieve the symptoms. *See* 20 C.F.R. § 416.929(c)(3).

Moreover, the Eleventh Circuit has been clear about what an ALJ must do, if the ALJ decides to discredit a claimant's subjective testimony "about the intensity, persistence, and limiting effects of [her] symptoms." *See* 20 C.F.R. § 416.929(c)(4). If the ALJ decides not to credit a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see Mitchell v. Commissioner of Soc. Sec.*, 771 F.3d 780, 792 (11th Cir. 2014) (similar). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotation marks and alterations omitted).[1] "The question is not . . . whether [the]

---

[1] The Social Security regulations no longer use the term "credibility," and have shifted the focus away from assessing an individual's "overall character and truthfulness"; instead, the regulations now focus on "whether the evidence

work." Doc. 14 at 13.

In determining Miller's RFC, the ALJ thoroughly addressed Miller's cyclic vomiting syndrome by considering the objective medical evidence, in addition to Miller's responses to questionnaires and Miller's testimony. The ALJ found that Miller testified that she was diagnosed with cyclic vomiting syndrome and that Miller rated her stomach pain a 9 out of 10. Doc. 9-3 at 15. The ALJ found that Miller was diagnosed with cyclic vomiting syndrome at Erlanger in May 2021. Doc. 9-3 at 16. At that visit, Miller "stated that she had fallen and sustained a penetrating injury to her abdomen and had been vomiting since then." Doc. 9-3 at 16. The ALJ found that, "[n]otably, Miller had normal coordination and balance." Doc. 9-3 at 16.

The ALJ then found that Miller continued to experience frequent vomiting into July 2021, "and she admitted to smoking marijuana to help ease the frequency." Doc. 9-3 at 16. Miller's medical records note that "cyclic vomiting has been associated with chronic use of marijuana [Claimant smokes marijuana every other day]." Doc. 9-4 at 25 (bracketed notation in original).

The ALJ considered Miller's consultative examination with Nurse Byrum, where Miller "explained her history of cyclical vomiting and estimated that she has vomiting spells two to three weeks out of the month, which results in fatigue." Doc. 9-3 at 17. At that examination, the ALJ found that Miller "stated that she is able to cook, perform personal hygiene, do household chores, shop, bank, and drive

independently." Doc. 9-3 at 17.  The ALJ found that Miller "had full range of motion and full strength throughout."  Doc. 9-3 at 17.

The ALJ also found that in September and October 2022 Miller was treated for urinary tract infections "that caused abdominal pain and vomiting.  Notably, [Miller] admitted that she had not sought treatment from a GI specialist in a year." Doc. 9-3 at 17.

After considering Miller's medical evidence and testimony regarding her cyclic vomiting syndrome, the ALJ found that Miller was able to perform work at the medium exertional level.  Doc. 9-3 at 17.

When addressing Miller's limitations, the ALJ began, "[a]t the outset," by finding that "the records do not support [Miller's] allegations regarding the frequency of vomiting."  Doc. 9-3 at 17.

The ALJ also found that, "while [Miller] alleged that she cannot work due to her vomiting, she has not sought significant treatment for this condition."  Doc. 9-3 at 17.

The ALJ found further that Miller "was prescribed medication and was encouraged to change her diet in 2021; however, her three visits to the emergency room in 2022 resulted in diagnoses of urinary tract infections."  Doc. 9-3 at 17.  The ALJ also found that Miller's RFC was "supported by [Miller's] treatment history and activities of daily living."  Doc. 9-3 at 18.

The ALJ's RFC determination shows that the ALJ explicitly considered Miller's cyclic vomiting syndrome, including her allegations and testimony, in reaching the finding that Miller "is able to perform medium work at the exertional level." Doc. 9-3 at 17. The findings in the ALJ's decision differentiate this case from the district court's decision in *Tinson v. Astrue*, where the ALJ "made no attempt to explain why the plaintiff's work capacity would not be significantly affected by such interferences with work" in light of the plaintiff's severe impairment of cyclic vomiting syndrome. No. 8:11-CV-2749-T-23TGW, 2012 WL 5509620, at *2 (M.D. Fla. Oct. 22, 2012).

Miller is correct that the ALJ found (at step two of the five-step sequential analysis) that Miller had the severe impairment of cyclic vomiting syndrome. *See* Doc. 9-3 at 13. But, because the ALJ then found—pursuant to the "pain standard" at step four of the analysis—that the evidence did not support Miller's allegations about the frequency of her vomiting and her inability to work due to her cyclic vomiting syndrome, there was no reason for the ALJ to "include in [Miller's] residual functional capacity any functional limitation arising from [Miller's] cyclic vomiting syndrome." *See* Doc. 14 at 13. Further, "[t]he residual functional capacity is an assessment based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d 12 1440. And, according to Social Security Ruling 96-8P, "RFC is not the least an individual can

do despite his or her limitations or restrictions, but the *most*." 1996 WL 374184 at
*2 (July 2, 1996) (emphasis in original).

Thus, the ALJ's decision and RFC finding included the necessary "explicit
and adequate reasons" for partially discrediting Miller's subjective testimony about
her symptoms—in particular, her cyclic vomiting syndrome. *Wilson*, 284 F.3d at
1225. The ALJ "considered [Miller's] medical condition as a whole," and the
decision was not just a "broad rejection" of Miller's subjective testimony. *Dyer*, 395
F.3d at 1210.

Substantial evidence requires "such relevant evidence as a reasonable person
would accept as adequate to support a conclusion" (*Crawford*, 363 F.3d at 1158),
and the court must affirm an ALJ's factual findings if they are supported by
substantial evidence, "[e]ven if the evidence preponderates against the
Commissioner's findings" (*Crawford*, 363 F.3d at 1158–59 (quoting *Martin*, 894
F.2d at 1529)). This court cannot reweigh the evidence (*see Winschel*, 631 F.3d at
1178), and there is sufficient evidence in the record to support the ALJ's findings
that Miller's testimony regarding the symptoms of her cyclic vomiting syndrome
was not consistent with the record as a whole and that Miller was able to perform
medium work. Accordingly, substantial evidence supported the ALJ's decision.
The ALJ clearly articulated a credibility finding that was supported by substantial
evidence, and the court cannot disturb that finding. *See Foote*, 67 F.3d at 1562.

II.    **The ALJ's partially favorable decision, given Miller's borderline age situation, was based on proper legal standards and supported by substantial evidence.**

In addition, the ALJ's partially favorable decision, in light of Miller's borderline age situation, was based on proper legal standards and supported by substantial evidence. *See Lewis*, 125 F.3d at 1439.

Miller argues that the ALJ "failed to fully evaluate [her] borderline age situation in the partially favorable decision finding her to be disabled as of July 14, 2023." Doc. 13 at 14.

With respect to the proper legal standards, in order to determine whether there is a borderline age situation when making a disability determination, the ALJ applies a two-part test:  (1) determine whether the claimant's age is within a few days or a few months of a higher age category; and (2) if so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled." *Crook v. Barnhart*, 244 F. Supp. 2d 1281, 1283 (N.D. Ala. 2003).  "If the answer to both is 'yes,' a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age."  *Id*.  Age categories are not applied mechanically in a borderline situation.  20 C.F.R. § 416.963(b).[2]  A claimant aged 55 or older is considered a

---

[2] "We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.  We will not apply the age categories mechanically in a borderline situation.  If you are within a few days to a few months

person of advanced age. 20 C.F.R. § 416.963(e).[3]

With respect to Miller, the ALJ found that a "borderline age situation exists because [she] is within a few days to a few months of attaining the next higher age category and applying the chronological age would result in denial of the Title XVI claim(s)." Doc. 9-3 at 18. The ALJ then found that use of the next higher age category "is supported by the significant adverse impact of all actors on [Miller's] ability to adjust to other work." Doc. 9-3 at 18.

---

of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 416.963 ("Your age as a vocational factor.").

[3] According to the SSA's "Hearings, Appeals, and Litigation Law Manual (or "HALLEX"), when determining whether to apply a higher age category in a borderline age situation, the ALJ first will determine the time period under review (e.g., "a few days to a few months"), and the ALJ then will analyze the other factors of the case (e.g., residual functional capacity combined with age, education, and work experience) to determine whether there are "additional elements present that seriously affect a claimant's ability to adjust to other work." HALLEX 1-2-2-42. If all of the factors support using a higher age category, the ALJ will find the claimant disabled with an established onset date that corresponds to the date of adjudication, date last insured, end of disabled widow(er)'s benefit prescribed period, end of child disability re-entitlement period, or date of cessation of disability. HALLEX 1-2-2-42. The Commissioner's brief points out that the onset date of July 14, 2023, "likely reflects a delay between when the [ALJ's] decision was written and when it was signed and released [on July 26, 2023]." Doc. 18 at 14. But, as Miller points out on reply, "HALLEX does not prescribe substantive rules and therefore does not carry the force and effect of law." Doc. 19 at 1; *accord Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) ("'[I]t is emphatically the province and duty of the judicial department to say what the law is.'" (quoting *Marbury v. Madison*, 1 Cranch 137, 177, 2 L. Ed. 60 (1803))).

The ALJ reasoned that, pursuant to 20 C.F.R. § 416.963(b), "when looking at age as a vocational factor, we will not apply the age categories mechanically in a borderline situation." Doc. 9-3 at 19. The ALJ continued that, because Miller "[wa]s within a few months of reaching an older age category and using the older age category will result in a finding of disability, we will consider the older age category after evaluating the overall impact of all the factors in this case." Doc. 9-3 at 19 (citing 20 C.F.R. § 416.963(b)).

Miller argues that, in this borderline age situation, the ALJ should have used the next higher age category—not as of July 14, 2023, the date that the ALJ found Miller's age category changed, Doc. 9-3 at 19–20—but as of "April 11, 2023 ([Miller's] hearing date which is also within six months of the ALJ's July 26, 2023 partially favorable decision)." Doc. 14 at 16. According to Miller, she "got little or no back pay as a result of the ALJ's determination of her onset date as July 14, 2023, and not April 11, 2023 (or earlier)." Doc. 14 at 16–17.

However, Miller recognizes that "the borderline age cases in this circuit do not require an ALJ to explain exactly how he or she determined the claimant's onset date in a borderline age case," and that an ALJ "just ha[s] to consider it." Doc. 14 at 16. The ALJ's decision demonstrates that the ALJ "consider[ed]" Miller's "onset date in [this] borderline age case." *See id.* For that reason, there can be no error in the ALJ's using the next higher age category as of July 14, 2023.

35

Nevertheless, Miller cites the district court's decision in *Hill v. Saul* for the proposition that an ALJ must "at least question the VE about the claimant's borderline situation." Doc. 14 at 16; *see* No. 20-20316-CIV, 2021 WL 4973515 (S.D. Fla. March 30, 2021). Miller argues that the ALJ in *Hill* "erred by failing to question the VE specifically about [the plaintiff's] borderline situation and any additional adversities." Doc. 14 at 16. Miller argues further that the ALJ here "also erred by failing to question the VE about her borderline situation and the impact of her additional adversities on her borderline age onset date issue," and that "[t]he hypothetical questions to the VE must include all relevant facts, including the borderline age situation of the claimant." Doc. 14 at 17.

But, in *Hill*, the district court reasoned that "[m]any district courts in the Eleventh Circuit have found that the ALJ's failure to discuss a borderline age situation constituted reversible error." 2021 WL 4973515, at *6 (collecting cases). The district court "agree[d]" with the plaintiff's argument that the ALJ "erred by failing to address or acknowledge" the plaintiff's borderline age situation in the ALJ's decision. *Id*. at *4. While the defendant argued that the ALJ "did not err by failing to consider the borderline age situation" because the ALJ "utilized the testimony of a VE," the district court reasoned that "it does not appear that the VE was questioned about [the plaintiff's] borderline situation and any additional adversities." *Id*. So, the district court in *Hill* did not suggest that an ALJ would be

36

required to question a VE about a claimant's borderline age situation in every case—just that the ALJ in that case had not questioned the VE and had not otherwise considered, discussed, addressed, or acknowledged the plaintiff's borderline age situation. *See id.* In this regard, the district court also reasoned that "it [wa]s not clear whether substantial evidence support[ed]" the Appeals Council's finding that, in "the borderline age situation," the "factors in the record d[id] not support application of the higher age category." *Id.* Consequently, the district court ordered "on remand the ALJ shall consider and discuss all the factors in [the plaintiff's] case and [the plaintiff's] age." *Id.*

In short, nothing in the district court's decision in *Hill* would require an ALJ to necessarily question a VE about a claimant's borderline age situation in order to properly assess the claimant's borderline age situation; rather, the district court's decision in *Hill* would require an ALJ to explicitly consider a claimant's borderline age situation when rendering a decision, which is exactly what the ALJ did here. Unlike in *Hill*, the ALJ's decision here did "consider the overall factors in [the plaintiff's] case before applying a particular age category" and did "explain [the ALJ's] reasoning in light of [the plaintiff's] borderline age situation." 2021 WL 4973515, at *7. Thus, the ALJ's partially favorable decision, given Miller's borderline age situation, was based on proper legal standards.

With respect to substantial evidence, because Miller would be 55 years old on

September 15, 2023, the ALJ considered Miller to be of advanced age as of July 14, 2023.  Doc. 9-3 at 19.

The ALJ found that, "if [Miller] had the residual functional capacity to perform the full range of medium work, a finding of 'not disabled' would be directed" by the Medical-Vocational Guidelines, but that Miller's "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations."  Doc. 9-3 at 19.  The ALJ found that Miller has a limited education, and no past relevant work.  Doc. 9-3 at 19; *see* Doc. 14 at 16 ("Miller certainly has 'additional vocational adversities' such as no past work experience and limited education to support the ALJ's decision to apply the higher age category to her case.").

Then, "[t]o determine the extent to which these limitations eroded [Miller's] unskilled medium occupational base," the ALJ considered the VE's testimony about "whether jobs existed in the national economy for an individual with [Miller's] age, education, work experience, and residual functional capacity," as to which the VE had "testified that given all of these factors the individual would have been able to perform the requirements of representative occupations."  Doc. 9-3 at 19.  "Based on the testimony of the vocational expert," the ALJ found that, "prior to the established onset date of disability, considering [Miller's] age, education, work experience, and residual functional capacity, [Miller] was capable of making a

successful adjustment to other work that existed in significant numbers in the national economy," and that "a finding of 'not disabled' [wa]s therefore appropriate" under the Medical-Vocational Guidelines.  Doc. 9-3 at 20.  But the ALJ then found that, "[b]eginning on the date [Miller's] age category changed, considering the claimant's age, education, and work experience, a finding of 'disabled' is reached by direct application" of the advanced age rule under the Medical-Vocational Guidelines.  Doc. 9-3 at 20 (citing Rule 203.10).  Thus, the ALJ's partially favorable decision, in light of Miller's borderline age situation, was supported by substantial evidence—that is, "such relevant evidence as a reasonable person would accept as adequate to support [the ALJ's] conclusion."  *See Crawford*, 363 F.3d at 1158.

Given the borderline age situation, the ALJ found that, "[p]rior to July 14, 2023, the date [Miller's] age category changed, considering [her] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [she] could have performed" (Doc. 9-3 at 19), that Miller "was not disabled prior to July 14, 2023, but became disabled on that date and has continued to be disabled through the date of this decision," and that "[h]er disability is expected to last twelve months past the onset date" (Doc. 9-3 at 20).  While Miller appears to request a remand for consideration of an earlier onset date—i.e., "April 11, 2023 (or earlier)," Doc. 14 at 16–17—this court must affirm because the ALJ's partially favorable decision, in light of Miller's borderline

age situation, was based on proper legal standards and supported by substantial evidence. To the extent that Miller seeks to rely on the regulation, 20 C.F.R. § 416.963 itself does not specify any standard for the timing when an onset date should be set in a borderline age situation; instead, the regulation calls only for consideration of a borderline age situation when the claimant is "within a few days to a few months of reaching an older age category." *Id.* In reviewing for substantial evidence, the court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted).

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C § 405(g)), the Commissioner's decision is **AFFIRMED**. The court separately will enter final judgment.

**DONE** and **ORDERED** this September 19, 2025.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE